**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GREATER-BIRMINGHAM ALLIANCE TO STOP POLLUTION, et al. | ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:25-cv-04469-CRC |
| DONALD TRUMP, President of the United States, in his official capacity, et al., | ) ) ) | |
| *Defendants*. | ) ) ) | |

**SUNCOKE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PARTIALLY UNOPPOSED MOTION TO INTERVENE**

Matthew Z. Leopold\*, Bar # 1657700
Zachary P. Lundgren, Bar # 90012330
HOLLAND & KNIGHT LLP
800 17th Street, N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 469-5757
Email: matt.leopold@hklaw.com
Email: zachary.lundgren@hklaw.com

*Counsel for SunCoke Energy, Inc.*

*\*Pro Hac Vice Pending Readmission*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 6

I.    SunCoke Has Article III Standing. ....................................................................... 7

II.   SunCoke Is Entitled to Intervene as a Matter of Right. ....................................... 8

    A.    SunCoke's Intervention Motion Is Timely. .................................................. 9

    B.    SunCoke Has a Legally Protectable Interest Relating to the Subject of this Lawsuit. .................................................................................................... 10

    C.    Without Intervention, Disposition of this Case Would Impair or Impede SunCoke's Ability to Protect Its Interests. ................................................. 11

    D.    SunCoke's Interests Are Not Adequately Represented by the Existing Parties. ...................................................................................................... 12

III.  In the Alternative, SunCoke Should Be Granted Permissive Intervention. ......... 15

IV.   SunCoke Should Be Permitted to File Its Responsive Pleading by the Third Business Day Following Federal Defendants' Deadline. ..................................... 17

CONCLUSION ............................................................................................................. 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*100Reporters LLC v. DOJ*,
307 F.R.D. 269 (D.D.C. 2014)..................................................................................16

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)..................................................................................................7

*Akiachak Native Cmty. v. DOI*,
584 F. Supp. 2d 1 (D.D.C. 2008)..........................................................................9, 10

*Am. Horse Prot. Ass'n v. Veneman*,
200 F.R.D. 153 (D.D.C. 2001)................................................................................13

*Am. Soybean Ass'n v. EPA*,
No. 1:20-cv-03190 (D.D.C. Nov. 13, 2020) ...........................................................17

*Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
272 F.R.D. 26 (D.D.C. 2010)..................................................................................12

*Bost v. Ill. State Bd. of Elections*,
607 U.S. ---, 2026 WL 96707 (Jan. 14, 2026) ..........................................................7

*Campaign Legal Ctr. v. FEC*,
334 F.R.D. 1 (D.D.C. 2019)......................................................................................9

*Carpenters Indus. Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017)......................................................................................8

*Defs. of Wildlife v. Jackson*,
284 F.R.D. 1 (D.D.C. 2012)................................................................................10, 11

*Diamond Alt. Energy v. EPA*,
606 U.S. 100 (2025)..............................................................................................7, 8

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. 1986) ...........................................................................11, 13, 14

*EEOC v. Nat'l Children's Ctr., Inc.*,
146 F.3d 1042 (D.C. Cir. 1998)..........................................................................15, 16

*Farmer v. EPA*,
759 F. Supp. 3d 101 (D.D.C. 2024)......................................................................11, 12

*Fowler v. EPA*,
No. 09-005, 2009 WL 8634683 (D.D.C. Sept. 29, 2009) ........................................................14

*Friends of the Headwaters v. U.S. Army Corps of Eng'rs*,
No. 21-0189, 2021 WL 1061162 (D.D.C. Mar. 20, 2021) .......................................................12

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ......................................................................................9, 10, 13, 14

*Greater Birmingham Alliance to Stop Pollution v. Trump*,
Case No. 1:25-cv-04469 (D.D.C. Dec. 22, 2025) ....................................................................5

*Green Oceans v. DOI*,
No. 1:24-CV-00141-RCL (D.D.C. Apr. 10, 2024) ...................................................................17

*Institutional S'holder Servs., Inc. v. SEC*,
142 F.4th 757 (D.C. Cir. 2025) ................................................................................................7

*Kinsella v. BOEM*,
No. 1:22-cv-02147-JMC (D.D.C. Nov. 7, 2022) ......................................................................17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................................................................................................................7

*Mil. Toxics Project v. EPA*,
146 F.3d 948 (D.C. Cir. 1998) ...................................................................................................8

*Nat'l Tr. for Historic Pres. v. Semonite*,
No. 1:17-cv-01574-RCL (D.D.C. Sept. 12, 2017) ...................................................................17

*NRDC v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) .........................................................................................11, 13, 14

*Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*,
338 F.R.D. 1 (D.D.C. 2021) .......................................................................................................8

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
331 F.R.D. 5 (D.D.C. 2019) ......................................................................................................10

*Smoke v. Norton*,
252 F.3d 468 (D.C. Cir. 2001) ...................................................................................................9

*SunCoke Energy, Inc. v. EPA*,
Case No. 24-1288 (D.C. Cir. Sept. 3, 2024) ...........................................................................5

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ..................................................................................................................13

iii

*United States v. Am. Tel. & Tel. Co.*,
     642 F.2d 1285 (D.C. Cir. 1980) ...............................................................................9, 13

**Statutes**

Clean Air Act Section 112, 42 U.S.C. § 7412 ................................................................1, 2, 4, 5

Clean Air Act Section 112(i)(4).........................................................................................1, 2, 5

**Other Authorities**

40 C.F.R. § 63.303 ....................................................................................................................4

40 C.F.R. § 63.7290 ..................................................................................................................4

40 C.F.R. § 63.7297 ..................................................................................................................4

40 C.F.R. § 63.7298 ..................................................................................................................4

40 C.F.R. § 63.7299 ..................................................................................................................4

40 C.F.R. § 63.7320 ..................................................................................................................4

88 Fed. Reg. 55858 (Aug. 16, 2023).........................................................................................4

*National Emission Standards for Hazardous Air Pollutants for Coke Ovens:
     Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Residual
     Risk and Technology Review, and Periodic Technology Review*, 89 Fed. Reg.
     55684 (July 5, 2024) ........................................................................................................4

90 Fed. Reg. 29997 (July 8, 2025).............................................................................................5

*Regulatory Relief for Certain Stationary Sources to Promote American Coke
     Oven Processing Security*, 90 Fed. Reg. 54517 (Nov. 26, 2025) .....................................1, 4, 5

*National Emission Standards for Hazardous Air Pollutants for Coke Ovens:
     Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Rescission
     of Extension of Compliance Deadlines for Coke Oven Facilities*, 90 Fed. Reg.
     56010, 56011 (Dec. 5, 2025) ............................................................................................5

Fed. R. Civ. P. 24.............................................................................................................. *passim*

Local Civil Rule 7(j) ..............................................................................................................3, 17

SunCoke Energy, Inc. ("SunCoke") respectfully submits this Memorandum of Points and Authorities in support of SunCoke's Partially Unopposed Motion to Intervene pursuant to Federal Rule of Civil Procedure 24.

## INTRODUCTION

SunCoke is the largest independent producer of coke in the United States and utilizes a proprietary coke-making process that recovers heat, has virtually no hazardous air emissions, and is uniquely regulated by the U.S. Environmental Protection Agency ("EPA"). SunCoke operates five coke production facilities that are subject to certain EPA-issued air pollution control regulations under Section 112 of the Clean Air Act ("the Coke Oven Rule" or "Rule").[1] SunCoke's coke oven facilities are critical to domestic steel production and to the economies of Ohio, Virginia, Illinois, and Indiana.

On November 26, 2024, President Trump issued a Presidential Proclamation (the "Coke Oven Proclamation" or "Proclamation"), invoking his authority under Clean Air Act Section 112(i)(4), and providing a two-year exemption for SunCoke's five facilities to comply with certain elements of the Coke Oven Rule.[2] This followed certain administrative actions at EPA, including a grant of a petition on March 20, 2025, for administrative reconsideration as to various aspects of the Coke Oven Rule, which is ongoing to provide regulatory relief to the coke industry. The Coke Oven Proclamation providing a two-year exemption for SunCoke's facilities is the action that Plaintiffs challenge in the instant lawsuit. This presidential action directly impacts and explicitly names SunCoke's facilities, thus SunCoke has a right to intervene in this lawsuit to protect its

---

[1] These five SunCoke facilities are (1) Middletown Coke Company, LLC, in Ohio; (2) Jewell Coke Company, L.P., in Virginia; (3) Haverhill Coke Company LLC, in Ohio; (4) Gateway Energy & Coke Company LLC, in Illinois; and (5) Indiana Harbor Coke Company LP, in Indiana.

[2] *Regulatory Relief for Certain Stationary Sources to Promote American Coke Oven Processing Security*, 90 Fed. Reg. 54517 (Nov. 26, 2025).

legally protected interests.

On December 22, 2025, Plaintiffs Greater-Birmingham Alliance to Stop Pollution, Clean Air Council, Environmental Law & Policy Center, Citizens for Pennsylvania's Future, Sierra Club, Just Transition Northwest Indiana, Hoosier Environmental Council, and National Resources Defense Council, Inc. (collectively "Plaintiffs") brought claims against President Trump, EPA, and EPA Administrator Lee Zeldin (collectively "Federal Defendants") alleging that the Coke Oven Proclamation exceeds authority under Section 112(i)(4) of the Clean Air Act and seeking to invalidate the Proclamation. SunCoke owns five of the eleven facilities that the President granted exemptions to, and as a result is the single most affected entity under the Rule and the Proclamation. *See, e.g.*, ECF No. 1 ¶ 37 ("[T]he U.S. has eleven operating coke plants . . . and five are HNR ovens operated by SunCoke.").[3] Absent the President's exemption, compliance with the existing Rule would require SunCoke to make substantial and immediate expenditures—while unable to feasibly comply—all at a time when EPA is reconsidering the Coke Oven Rule.

For reasons more fully stated below, SunCoke readily meets the test for intervention as of right under Rule 24(a). As a threshold matter, SunCoke has Article III standing. SunCoke also satisfies the four-factor intervention test for Rule 24(a) intervention. *First*, SunCoke's Motion is timely and would not prejudice any of the existing parties. *Second*, SunCoke has direct, substantial, and legally protectable interests in the challenged Coke Oven Proclamation. *Third*, Plaintiffs'

---

[3] The term "HNR" is a regulatory term referring to "heat non-recovery." All of SunCoke's facilities are "non-recovery" with respect to coal derived chemical byproducts. However, only four of SunCoke's five U.S. facilities are heat recovery facilities, which use the waste heat from coke oven gas to produce steam in on-site heat recovery steam generators. That steam is then either sent to a customer for use or sent to a steam turbine generator on site to make electricity. SunCoke's facilities are generally referred to herein as "heat-recovery" facilities, but we note the exception of the Jewell facility, located in Vansant, Virginia, which does not utilize heat recovery at this time. At Jewell, the fully combusted flue gas is exhausted to the atmosphere through waste heat stacks on top of each battery of ovens.

requested relief threatens to directly impair SunCoke's interests. *Fourth*, SunCoke's participation in this case is necessary because its interests are distinct from those of the Federal Defendants and other coke maker intervenors that are not adequately represented in this litigation. SunCoke—as the only operator of heat recovery facilities—possesses potentially indispensable firsthand knowledge of its plant operations, maintenance practices, and the technical realities of its equipment. SunCoke likewise meets the standard for permissive intervention under Rule 24(b) and, as this lawsuit just began, permissive intervention would not unduly delay or prejudice the adjudication of the Plaintiffs' or Federal Defendants' rights.

For these reasons, and those explained in further detail below, the Court should allow SunCoke to intervene in this matter. If the Court grants SunCoke's Motion to Intervene, SunCoke respectfully requests that the Court allow SunCoke to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j) by the third business day following the Federal Defendants' deadline or, alternatively, by the same deadline as the Federal Defendants. Plaintiffs do not oppose this request.

## BACKGROUND

SunCoke is the largest independent producer of coke in the United States. Coke is the principal raw material in the blast furnace steel-making process, and coke is produced by heating metallurgical coal in a refractory oven. Coke is a key ingredient in the production of steel made by heating metallurgical coal in large-scale, specially-designed ovens. Once formed, this carbon rich product is transferred to a steel mill where it is used in a blast furnace as part of the steel-making process. SunCoke's process is significantly different from other metallurgical coke producers primarily due to its proprietary heat-recovery coke-making technology, which converts waste heat from the coking process into steam or electricity, as well as the fact it produces virtually no hazardous air pollutants. There are eleven coke plants operating in the United States, and SunCoke

3

owns and operates five of them—(1) Middletown Coke Company, LLC, in Ohio; (2) Jewell Coke Company, L.P., in Virginia; (3) Haverhill Coke Company LLC, in Ohio; (4) Gateway Energy & Coke Company LLC, in Illinois; and (5) Indiana Harbor Coke Company LP, in Indiana.

On July 5, 2024, EPA published the Coke Oven Rule, pursuant to section 112 of the Clean Air Act, 42 U.S.C. § 7412, titled *National Emission Standards for Hazardous Air Pollutants for Coke Ovens: Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Residual Risk and Technology Review, and Periodic Technology Review*, 89 Fed. Reg. 55684 (July 5, 2024). The Coke Oven Rule, among other things, established more stringent emissions standards unique to heat nonrecovery ("HNR") coke oven plants, all of which are operated by SunCoke. These requirements include opacity monitoring and action opacity limits for bypass/waste heat stacks, 40 C.F.R. § 63.7299; revised monitoring requirements, *id.* § 63.303(a)(1)(i)–(ii); as well as numerous new emission limits and associated performance testing requirements, *id.* §§ 63.7290(b)–(d), 63.7297(a)–(d), 63.7320(a), and 63.7298(a)–(e).

During the rulemaking process, SunCoke filed comments explaining why the proposed rule, 88 Fed. Reg. 55858 (Aug. 16, 2023), was unlawful for a variety of reasons, contained factual errors about SunCoke's unique production process, would weaken the domestic steel and foundry industry, and would bring severe economic harm to SunCoke.[4] SunCoke requested that EPA either correct and reissue the proposed rule or extend the comment period. Nonetheless, EPA promulgated the final rule on July 5, 2024. In doing so, EPA erroneously concluded that "facilities will be able to comply with these limits without the need for any new [or additional] controls." 89

---

[4] *See* Comment ID EPA-HQ-OAR-2003-0051-1342 (Sept. 5, 2023), *available at*; https://www.regulations.gov/comment/EPA-HQ-OAR-2003-0051-1342; Comment ID EPA-HQ-OAR-2002-0085-0968, *available at* https://www.regulations.gov/comment/EPA-HQ-OAR-2002-0085-0968.

4

Fed. Reg. at 55696, 55707.

On September 3, 2024, SunCoke submitted to a petition to EPA seeking reconsideration and a stay of the Coke Oven Rule.[5] The same day, SunCoke filed petition for review of the Rule in the D.C. Circuit. *See SunCoke Energy, Inc. v. EPA*, Case No. 24-1288 (D.C. Cir. Sept. 3, 2024).

On July 3, 2025, EPA issued an Interim Final Rule extending compliance deadlines to July 5, 2027, 90 Fed. Reg. 29997 (July 8, 2025), which was challenged in *Greater Birmingham Alliance to Stop Pollution v. Trump*, Case No. 1:25-cv-04469 (D.D.C. Dec. 22, 2025).

On November 21, 2025, President Trump issued the Coke Oven Proclamation exempting eleven coke oven facilities from specified compliance deadlines for a period of two years beyond the Coke Oven Rule's relevant compliance dates. 90 Fed. Reg. 54517, 54518 (Nov. 26, 2025). The Proclamation cited Clean Air Act section 112(i)(4), and listed SunCoke's five facilities in Annex I of the Proclamation. *Id.* at 54519–20. The Proclamation announced the President's determinations that that, "[t]he technology to implement the Coke Oven Rule is not available" and "[i]t is in the national security interests of the United States to issue this Exemption." *Id.* at 54518.

On December 5, 2025, EPA published a notice rescinding the Interim Final Rule, and in EPA's words, "effectively reinstituting" the Coke Oven Rule's compliance deadlines. *National Emission Standards for Hazardous Air Pollutants for Coke Ovens: Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Rescission of Extension of Compliance Deadlines for Coke Oven Facilities*, 90 Fed. Reg. 56010, 56011 (Dec. 5, 2025).

Plaintiffs now challenge the President's Coke Oven Proclamation, asserting it exceeds his Clean Air Act authority and is *ultra vires*. *See* ECF No. 1 ¶¶ 118–55. Plaintiffs ask the Court to

---

[5] Petition for Reconsideration and Request for Agency Stay Pending Reconsideration of Final Rule, Docket Nos. EPA-HQ-OAR-2002-0085; PA-HQ-OAR-2003-0051 (Sept. 3, 2024), https://www.regulations.gov/document/EPA-HQ-OAR-2003-0051-1988.

declare that the Coke Oven Proclamation is unlawful and invalid and find that the Annex I sources—including SunCoke's five coke oven facilities—remain subject to the deadlines in the Coke Oven Rule as initially promulgated. *Id.* at 31–32. Plaintiffs further seek an injunction prohibiting EPA from implementing the Coke Oven Proclamation, and directing EPA to notify all Annex I sources that the Coke Oven Proclamation is invalid and they must comply with the deadlines in the Coke Oven Rule. *Id.*

SunCoke has made planning and compliance decisions for these facilities in reliance on the President's grant of temporary regulatory relief. SunCoke's legally protected interest in the regulatory relief provided by the Proclamation would be directly impaired if this Court declared the Proclamation unlawful and essentially invalidated its legal effect, as Plaintiffs ask.

## ARGUMENT

This Court should grant SunCoke's Motion to Intervene for several reasons. First, SunCoke has Article III standing to intervene. Plaintiffs target the Coke Oven Proclamation's granting of presidential exemptions to five SunCoke facilities. Granting Plaintiffs' requested relief would cause concrete and particularized injury on SunCoke by upending that Presidential reprieve. Rejecting Plaintiffs' challenge and preserving the status quo would avoid that injury.

SunCoke also meets the requirements for intervention as a matter of right under Rule 24(a) and, in the alternative, permissive intervention under Rule 24(b). SunCoke has a substantial interest in defending the Coke Oven Proclamation, as an unfavorable court decision in this matter would reinstate emissions requirements on SunCoke, which faces the most significant burden under the Coke Oven Rule. SunCoke is the nation's largest independent producer of coke and owns five of the eleven coke oven facilities exempted by the President, including all of the uniquely impacted "heat non-recovery" plants. Accordingly, SunCoke has Article III standing and satisfies the requirements for both intervention as a matter of right and permissive intervention. Fed. R.

6

Civ. P. 24(a)–(b). To protect its interests and ensure its unique perspective is adequately represented in this litigation, SunCoke respectfully moves to intervene in this case.

## I.    SunCoke Has Article III Standing.

To the extent necessary to demonstrate Article III standing, SunCoke easily meets that burden.[6] Standing exists when there is (1) an injury in fact, that is actual or imminent, and concrete and particularized, that (2) is causally connected to the conduct at issue and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Put more simply, Article III requires a "'personal stake' in a case to have standing." *Bost v. Ill. State Bd. of Elections*, 607 U.S. ---, 2026 WL 96707, at *3 (Jan. 14, 2026). A litigant seeking standing "must, in other words, be able to answer a basic question: 'What's it to you?'" *Id.* (quoting A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U.L. Rev. 881, 882 (1983)).

In the context of regulated entities participating in litigation about their regulatory requirements, the answer to that question is relatively easy. The Supreme Court has long held that parties have "sufficient standing" when "the regulation is directed at them in particular." *Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967). Indeed, if a party is "an object of the action (or forgone action) at issue" there is "ordinarily little question that the action or inaction has caused him injury." *Diamond Alt. Energy v. EPA*, 606 U.S. 100, 112 (2025) (citing *Lujan*, 504 U.S. at 561–

---

[6] D.C. Circuit precedent appears unsettled regarding the requirement for certain applicants for intervention to demonstrate Article III standing. *See Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (acknowledging tension). Specifically, existing D.C. Circuit precedent has required intervenors to demonstrate Article III standing even when they pursue "the same relief as an existing party," *id.* (collecting cases), despite Supreme Court authority indicating that no demonstration is necessary when intervenors "seek the same relief sought by at least one existing party," *id.* (citing *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)). Here, SunCoke seeks the same relief sought by the Federal Defendants—a decision from this Court denying Plaintiffs' request for relief.

62). In analogous circumstances regarding standing for defendant-intervenors, the D.C. Circuit has held that manufacturers "directly subject to" a challenged EPA rule had standing to intervene in defense of the rule because they "would suffer concrete injury if the court grants the relief the petitioners seek." *See Mil. Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998).

SunCoke's five facilities are the direct object of the Coke Oven Rule and of the President's Proclamation. Here, the Plaintiffs' lawsuit challenges the timing of regulatory requirements that apply directly to five SunCoke facilities. The President determined that these facilities qualify for two-year exemptions from certain regulatory requirements, but Plaintiffs seek to impose those requirements more quickly. Specifically, Plaintiffs seek a declaration that SunCoke's facilities "remain subject to the Coke Ovens Rule as [originally] promulgated." ECF No. 1 at 31. A decision in the Plaintiffs' favor would cause concrete and particularized injury to SunCoke by requiring immediate financial expenditures to comply with the Coke Oven Rule. *See Diamond Alt. Energy*, 606 U.S. at 114 ("[M]onetary costs 'are of course an injury.'" (quoting *United States v. Texas*, 599 U.S. 670, 676 (2023))); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("Economic harm to a business clearly constitutes an injury-in fact. . . . A dollar of economic harm is still an injury-in-fact for standing purposes."). Conversely, a decision in the Federal Defendants' favor would maintain the status quo and avoid that injury to SunCoke. Accordingly, SunCoke has Article III standing to intervene regardless of whether such standing is required by the Constitution.

## II.     SunCoke Is Entitled to Intervene as a Matter of Right.

Under Rule 24(a)(2), SunCoke is entitled to intervention as of right in this action. "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . . and declarations supporting the motion as true absent sham, frivolity or other objections." *Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 5 n.2 (D.D.C. 2021)

(quoting *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010)). Courts must allow intervention as of right when the application to intervene is timely; the applicant demonstrates a legally protected interest in the action; the action threatens to impair that interest; and no other party to the action can adequately represent the applicant's interests. *Campaign Legal Ctr. v. FEC*, 334 F.R.D. 1, 4 (D.D.C. 2019) (quoting *Deutsche Bank Nat'l Trust v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013)); Fed. R. Civ. P. 24(a).

### A.    SunCoke's Intervention Motion Is Timely.

In assessing timeliness, this Circuit considers factors such as (1) the time elapsed since the inception of the suit, (2) the purpose for which intervention is sought, (3) the necessity for intervention as a means of preserving the applicant's rights, and (4) the improbability of prejudice to those already parties in the case. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980); *see also Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) ("The district court has much latitude in assessing the timeliness of a motion . . . ."). The most critical factor is whether any "delay in moving for intervention will prejudice the existing parties to the case." *Akiachak Native Cmty. v. DOI*, 584 F. Supp. 2d 1, 5 (D.D.C. 2008) (quoting 7C *Wright & Miller's Federal Practice & Procedure* § 1916 (3d ed. 2007)).

SunCoke's Motion is timely because it satisfies the above considerations and would not prejudice the existing parties. This lawsuit is one month old. Plaintiffs filed the Complaint on December 22, 2025. ECF No. 1. They served the Federal Defendants between December 29, 2025, and January 7, 2026. ECF No. 31. The Federal Defendants have until February 28, 2026, to file a responsive pleading. *Id.* Currently, the Complaint is the only substantive filing in this case. This confirms that minimal time has lapsed since the inception of this action, and that SunCoke's intervention will not prejudice the existing parties. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (finding motion timely when filed less than two months after

commencement of suit); *Akiachak*, 584 F. Supp. 2d at 5 (finding no prejudice to existing parties where intervenor movants filed motion on same day defendants "filed their answer to the consolidated complaint and before any dispositive motions were filed"). Accordingly, SunCoke's Motion is timely.

**B.    SunCoke Has a Legally Protectable Interest Relating to the Subject of this Lawsuit.**

SunCoke also satisfies the second requirement of Rule 24(a)(2) because it has "an interest relating to the property or transaction which is the subject matter of the action." Fed. R. Civ. P. 24(a)(2). This requirement is satisfied by demonstrating that a "legally protectable" interest is at stake. *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 12 (D.D.C. 2019). "An intervenor's interest is obvious when [it] asserts a claim to property that is the subject matter of the suit . . . ." *Fund for Animals, Inc.*, 322 F.3d at 735 (quoting *Foster v. Guery*, 655 F.2d 1319, 1324 (D.C. Cir. 1981)). "A legally protectable interest is of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Defs. of Wildlife v. Jackson*, 284 F.R.D. 1, 6 (D.D.C. 2012), *aff'd in part, appeal dismissed in part sub nom. Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013).

SunCoke has a legally protectable interest at the center of this action: the regulatory relief granted to five specific SunCoke facilities by the President's Coke Oven Proclamation. Plaintiffs ask this Court to declare the Proclamation unlawful and to effectively invalidate it. That would force SunCoke's facilities to comply with the postponed requirements sooner than the date the President established under the Clean Air Act.

Reinstating the presently postponed requirements of the Coke Oven Rule would place immediate and severe operational and financial burdens on SunCoke's five coke oven facilities. The Coke Oven Rule established over a dozen new "MACT floor" emission limits applicable to

SunCoke's operations, some of which SunCoke cannot currently meet. At a minimum, SunCoke projects costs ranging from $61 million to $99 million just to achieve the new limits for two pollutants at one facility—with potentially up to $1.2 billion in compliance costs across all five facilities depending on the outcome of testing.

Therefore, SunCoke's interests in retaining the Coke Oven Proclamation's extension of compliance obligations for these five coke oven plants constitute a legally protectable interest. SunCoke "will either gain or lose by the direct legal operation and effect of the judgment in this case, this much is clear." *Defs. of Wildlife v. Jackson*, 284 F.R.D. at 6 (quoting *In re Endangered Species Act Section 4 Deadline Litig.*, 279 F.R.D. 1, 5 (D.D.C. 2010)); *cf. Dimond v. District of Columbia*, 792 F.2d 179, 182 (D.C. 1986) (recognizing financial interests for purposes of intervention).

### C. Without Intervention, Disposition of this Case Would Impair or Impede SunCoke's Ability to Protect Its Interests.

To satisfy the third factor of the Rule 24(a)(2) test, SunCoke need only show that an unfavorable disposition of this action "may as a practical matter impair or impede" its ability to protect its interests. Fed. R. Civ. P. 24(a)(2). The D.C. Circuit interprets this language to require a court to consider the "practical consequences of denying intervention," including economic consequences, and "even where the possibility of future challenge to the regulation remain[s] available.'" *Farmer v. EPA*, 759 F. Supp. 3d 101, 110 (D.D.C. 2024) (quoting *Fund for Animals, Inc.*, 322 F.3d at 735). This requirement is met when "reestablishing the status quo" would "be difficult and burdensome." *Id.* Importantly, "it is not enough to deny intervention under [Rule] 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation," and "especially in administrative law cases, questions of 'convenience' are clearly relevant." *NRDC v. Costle*, 561 F.2d 904, 910 (D.C. Cir. 1977) (quoting *Nuesse v. Camp*, 385 F.2d

11

694, 700 (D.C. Cir. 1967)). Where, as here, a movant seeks intervention to defend the validity of a government approval or exemption it has been granted, a decision in the movant's absence would impair its ability to protect that interest. *See, e.g.*, *Friends of the Headwaters v. U.S. Army Corps of Eng'rs*, No. 21-0189, 2021 WL 1061162, at *3 (D.D.C. Mar. 20, 2021) (granting intervention where requested relief "would as a practical matter impede" permit holder's ability to proceed by requiring it "to halt construction and incur additional costs associated with delay").

Plaintiffs ask this Court to invalidate the effect of the Coke Oven Proclamation on SunCoke's facilities and reinstate the original compliance deadlines. A finding that the Proclamation is reviewable and invalid would severely impact the interests that SunCoke seeks to protect in this litigation. If this Court issues a decision undermining the exemptions, reestablishing the status quo would be significantly burdensome, if not impossible. "[T]he practical consequence of denying intervention would be to deprive [SunCoke] of an opportunity to raise arguments and defenses" supporting the Coke Oven Proclamation to protect SunCoke's vital interests. *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010). Additionally, an unfavorable ruling in this case would alter the status quo by rapidly subjecting SunCoke to "undue adverse regulations" of the Coke Oven Rule. *Farmer*, 759 F. Supp. 3d at 110.

SunCoke's intervention in this action is thus necessary to protect its significant interests in the Coke Oven Proclamation exempting SunCoke's five coke oven facilities from the Coke Oven Rule.

**D.    SunCoke's Interests Are Not Adequately Represented by the Existing Parties.**

Given that SunCoke has significant protectable interests that may be impaired by the disposition of this litigation, SunCoke has the right to intervene so long as its interests *may* not be adequately represented by the existing parties. Fed R. Civ. P. 24(a)(2). As the D.C. Circuit has

12

explained, a movant "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *Am. Tel. & Tel. Co.*, 642 F.2d at 1293 (quoting 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (1972)). This requirement is "not onerous" and represents a "low" threshold. *Fund For Animals*, 322 F.3d at 735, 736 n.7. "[P]artial congruence of interests . . . does not guarantee the adequacy of representation." *Id.* at 737. Recognizing this, the D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id.* at 736; *see also Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001) (noting that the agency's "general interest" in seeing its decisions upheld "does not mean [the parties'] particular interests coincide so that representation by the agency alone is justified").

In this Circuit, it is well established that government agencies defending their actions will not adequately represent the interests of the regulated community even when interests may align. *See, e.g.*, *Dimond*, 792 F.2d at 192–93 ("A government entity such as the District of Columbia is charged by law with representing the public interest of its citizens. State Farm, on the other hand, is seeking to protect a more narrow and 'parochial' financial interest not shared by the citizens of the District of Columbia."). "The applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Id.* at 192 (citations omitted). The burden of making this showing is thus "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *NRDC*, 561 F.2d at 911–12 ("Even when the interests of EPA and [the intervention applicant] can be expected to coincide, such as on the exclusion of a specific pollutant from regulation, that does not necessarily mean that adequacy of representation is ensured for purposes of Rule 24(a)(2)." (footnote omitted)).

Here, the Federal Defendants cannot adequately represent SunCoke's interests in

13

defending the Coke Oven Proclamation's postponement of certain compliance deadlines as applied to SunCoke's five coke oven plants. Unlike SunCoke, the Federal Defendants would suffer no regulatory burden or economic harm from the relief Plaintiffs seek if an unfavorable outcome occurs in this case. This alone creates divergent incentives in approaching the lawsuit. *Cf. Fund for Animals*, 322 F.3d at 736 ("[T]aking the [intervenor movant's] efforts 'into account' does not mean giving the kind of primacy that the [movant] would give them."); *Fowler v. EPA*, No. 09-005, 2009 WL 8634683, at *4 (D.D.C. Sept. 29, 2009) (finding this element satisfied because movants had economic and operational concerns not obviously shared by EPA).

Further, the Federal Defendants' interests are likely to account for broader governmental policy concerns, such as protecting presidential prerogatives. These concerns may also fluctuate depending on different administrations and their respective priorities. On the other hand, SunCoke is acutely focused on the effects of the Coke Oven Proclamation (and this litigation) as it pertains to SunCoke's five coke oven plants. *See, e.g.*, *Dimond*, 792 F.2d at 192–93 (discussing company's "'parochial' financial interest not shared by the citizens"); *Fund for Animals*, 322 F.3d at 736 n.9 (providing examples of divergent interests between the government and intervenor movant).

In sum, SunCoke's "interest is more narrow and focused," as it is "concerned primarily with the regulation that affects [SunCoke's plants]." *NRDC*, 561 F.2d at 912. SunCoke's intervention is necessary "to serve as a vigorous and helpful supplement," especially to answer "questions of very technical detail and data; on the basis of [its own] experience," to "contribute to the informed resolutions" to which only SunCoke can present and raise. *Id.* at 912–13. Existing parties are therefore incapable of adequately representing SunCoke's unique interests.

Nor would SunCoke's interests be adequately represented by proposed Defendant-Intervenors the American Coke and Coal Chemicals Institute (ACCCI) and the Coke Oven

14

Environmental Task Force (COETF) (collectively, "Byproduct Coke Plant Movants"), who moved to intervene on January 27, 2026. *See* ECF No. 32. The Byproduct Coke Plant Movants are trade associations whose members own and operate all of the "byproduct recovery" cokemaking facilities in the United States. By contrast, SunCoke is itself a directly regulated entity that operates all of the nation's "heat nonrecovery" cokemaking facilities, which convert waste heat into steam and electricity and have no chemical byproduct streams and virtually no hazardous air emissions. EPA's Coke Oven Rule imposes different requirements on SunCoke's uniquely designed plants than it does on the byproduct recovery plants—and the President's Proclamation likewise exempts SunCoke's plants from those unique heat nonrecovery requirements. Plaintiffs also raise distinct factual and legal challenges specific to the heat nonrecovery provisions—and even make allegations about individual SunCoke plants. A defense focused on byproduct recovery plants will not adequately address these SunCoke-specific issues presented by the President's two-year exemption.

Given the foregoing, SunCoke meets the four factors and is entitled to intervene as of right in this matter pursuant to Rule 24(a)(2).

### III.    In the Alternative, SunCoke Should Be Granted Permissive Intervention.

In the alternative, the Court should grant SunCoke permissive intervention because it has met the requirements of Rule 24(b). Under that rule, upon timely application, a would-be party can intervene "when an applicant's claim or defense have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). In applying this discretionary standard, courts consider whether the applicant has "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d

15

1042, 1046 (D.C. Cir. 1998).

SunCoke satisfies the standard for permissive intervention under Rule 24(b) for many of the same reasons that it is entitled to intervene as of right. First, this Court has an independent basis for subject matter jurisdiction over the defenses that SunCoke will advance. Because Plaintiffs' claims arise under the laws of the United States—the Clean Air Act—and SunCoke has Article III standing, this Court has original jurisdiction.

Second, as shown above, SunCoke's motion is timely. This case just began and the Federal Defendants' Answer deadline is weeks away. Intervention at this earliest stage of litigation will not delay the proceeding and SunCoke is prepared to meet any schedule set by this Court.

Third, SunCoke's defense of the Coke Oven Proclamation shares a "common question" with the main action, namely whether the Coke Oven Proclamation—which directly impacts the regulatory requirements as to SunCoke and its five coke oven plants—should be upheld.

Additionally, permissive intervention is appropriate because SunCoke's participation in this case will significantly contribute to full development of the underlying factual issues in the suit. As an industry participant and the owner of five coke oven facilities at the center of this case, SunCoke is uniquely positioned to provide relevant information to the Court to address the merits and ramifications of Plaintiffs' arguments. Moreover, if anything, permissive intervention ensures that SunCoke could adequately represent and protect its distinct interests in a timely, efficient manner. *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 286–87 (D.D.C. 2014) ("The proper approach . . . is to allow all interested parties to present their arguments in a single case at the same time, especially when the intervenors have timely moved to join . . . before the Court even has held a status conference . . . ."). Therefore, SunCoke's participation in this action as an intervenor will promote a fair and full adjudication of Plaintiffs' claims.

16

**IV.    SunCoke Should Be Permitted to File Its Responsive Pleading by the Third Business Day Following Federal Defendants' Deadline.**

Additionally, SunCoke respectfully seeks leave to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Rule 7(j) by the third business day following the Federal Defendants' deadline, or if the Court deems appropriate, by the same deadline as Federal Defendants.

SunCoke's Motion sets forth the nature and basis for its need to participate in this lawsuit, such that the Court may adequately evaluate the issues and grant SunCoke intervention without a corresponding pleading. Deferring the deadline for SunCoke's Answer or other responsive pleading to after Federal Defendants' deadline will promote judicial economy by not requiring such filings until Federal Defendants are also required to file. *See, e.g.*, *Green Oceans v. DOI*, No. 1:24-CV-00141-RCL, ECF No. 25 (D.D.C. Apr. 10, 2024); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, ECF No. 43 (D.D.C. Nov. 7, 2022) (granting intervention and ordering Answer or other responsive pleading under Rule 24(c) to be filed on same date as federal defendants); *Am. Soybean Ass'n v. EPA*, No. 1:20-cv-03190, ECF No. 20 (D.D.C. Nov. 13, 2020) (granting motion to intervene and to defer filing responsive pleading under Rule 24(c) to same date as federal defendant); *Nat'l Tr. for Historic Pres. v. Semonite*, No. 1:17-cv-01574-RCL, ECF No. 24 (D.D.C. Sept. 12, 2017) (granting intervention and allowing intervenor's answer to be filed on same date as federal defendants' answer).

If the Court finds that such additional time is not warranted, SunCoke requests that it be allowed to file its answer or other responsive pleading on the same day as Federal Defendants. Finally, granting this request will not cause any delay in this litigation as Federal Defendants have not yet filed their own responsive pleading and this lawsuit just began.

## CONCLUSION

For the above reasons, SunCoke respectfully requests that the Court grant its Partially Unopposed Motion to Intervene in this case and permit SunCoke to participate in this lawsuit as an intervenor.

Dated: February 5, 2026

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Zachary P. Lundgren*
Zachary P. Lundgren, Bar # 90012330
Matthew Z. Leopold*, Bar # 1657700
HOLLAND & KNIGHT LLP
800 17th Street, N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 469-5757
Email: matt.leopold@hklaw.com
Email: zachary.lundgren@hklaw.com

*Counsel for SunCoke Energy, Inc.*

**Pro Hac Vice Pending Readmission*

18

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with Local Rule 7(e) because it does not exceed 45 pages.

Dated: February 5, 2026                              */s/ Zachary P. Lundgren*
                                                     Zachary P. Lundgren

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 5th day of February, 2026, I served a true and correct copy of

the foregoing by ECF on the following:

Haley Colson Lewis
David G. Bookbinder
Abel J. Russ
ENVIRONMENTAL INTEGRITY PROJECT
888 17th Street NW
Ste 810
Washington, DC 20006
202-263-4449
Email: hlewis@environmentalintegrity.org
Email: dbookbinder@environmentalintegrity.org
Email: aruss@environmentalintegrity.org

Jaclyn Brass
Christina Tidwell
SOUTHERN ENVIRONMENTAL LAW CENTER
2829 2nd Ave S
Suite 282
Birmingham, AL 35233
706-766-1102
Email: jbrass@selc.org
Email: ctidwell@selcal.org

Keri Nicholas Powell
SOUTHERN ENVIRONMENTAL LAW CENTER
Ten 10th Street NW
Ste 1050
Atlanta, GA 30309
917-573-8853
Email: kpowell@selc.org

Brian Hamilton Lynk
ENVIRONMENTAL LAW & POLICY CENTER
740 15th St, NW
Ste 700
Washington, DC 20005
240-461-4241
Email: blynk@elpc.org

2

Tosh Sagar
EARTHJUSTICE
1001 G Street, NW
Suite 1000
Washington, DC 20001
202-797-4300
Email: tsagar@earthjustice.org

Sarah A. Buckley
NATURAL RESOURCES DEFENSE COUNCIL
1152 15th St. NW
Suite 300
Washington, DC 20005
202-836-9555
Email: sbuckley@nrdc.org

*Counsel for Plaintiffs*

Jeffrey A. Knight
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
202-663-9152
Email: jeffrey.knight@pillsburylaw.com

*Counsel for ACCCI and the COETF*

Dated: February 5, 2026                    */s/ Zachary P. Lundgren*
                                           Zachary P. Lundgren

3