IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREATER BIRMINGHAM ALLIANCE
TO STOP POLLUTION, et al.,

    *Plaintiffs*,

v.

DONALD TRUMP, et al.,

    *Defendants*.

Case No. 1:25-cv-04469-CRC

**COKE OVENS PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR CONSOLIDATION AND ABEYANCE OF CASES**

    The eight plaintiffs here ("Coke Ovens Plaintiffs") filed their Complaint to seek relief from a proclamation enabling the entire coke oven industry to ignore compliance with toxic air pollution standards that were due to be implemented eight months ago. EPA has found that "[c]oke oven emissions are among the most toxic of all air pollutants" and likely cause cancer.[1] Plaintiffs' members' exposure to this pollution, as well as the deprivation of health-relevant information that would obtain from implementing the Coke Ovens Rule, has injured them since non-compliance began and will continue to do so until the proclamation is enjoined. *Nat. Res. Def. Council v. EPA*, 749 F.3d 1055, 1062 (D.C. Cir. 2014) (Kavanaugh, J.) (finding injury where "members will suffer from [] higher emissions"). Thus, Defendants' motion for consolidation and abeyance is no benign procedural motion; granting it would harm these Plaintiffs immediately, and indefinitely, by sidelining them to await the outcome of another case involving a different industry's non-compliance with other standards that affect other claimants.

---

[1] EPA, Fact Sheet: Coke Oven NESHAP 1 (2016), https://perma.cc/37K9-CEYA; National Emission Standards for Coke Oven Batteries, 70 Fed. Reg. 19992, 19993 (Apr. 15, 2005).

Plaintiffs already waited almost 20 years for EPA to promulgate overdue updated standards to control coke ovens' toxic air pollution, and that promulgation occurred only after EPA was sued and forced to act. *Infra* at 4. Then, the current administration unlawfully issued a two-year exemption proclamation for the entire industry, to further delay new protections that were to take effect in July 2025. Forcing these Plaintiffs—who sought a week ago to move for summary judgment—to wait for another case's resolution would give Defendants all the benefits of their unlawful action, while thwarting the Coke Ovens Plaintiffs from vindicating their rights.

Defendants fail to make the minimum required showing to support abeyance. A stay movant "*must* make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay" will harm the non-movant. *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added). The harm to Plaintiffs from a stay is readily apparent. It will enable non-compliance with the Coke Ovens Rule, under cover of a facially illegal proclamation, to continue day-by-day for however long it takes to resolve *t.e.j.a.s. et al., v. Trump, et al.*, 1:25-cv-03745-CRC (D.D.C.), the separate case that the United States unilaterally proposes should "lead." In response to this showing, Defendants—who carry the burden under *Landis*'s balance of harms test—cite nothing more than the inconvenience of defending multiple cases. *Infra* at 7-8. The caselaw is clear: "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*" and is not a proper basis to enter a stay that could harm the nonmovants. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21 (D.D.C. 2019); *see also Belize Soc. Dev. Ltd. v. Govt. of Belize*, 668 F.3d 724, 731-33 (D.C. Cir. 2012) (finding abuse of discretion where the court below granted a stay despite movant's failure to make a proper *Landis* balance of harms showing).

Because Defendants fail *Landis*'s balance of harms test, their claims of efficiency—"the third *Landis* factor"—cannot justify a stay even if they are credible. *Mieco, Inc. v. Triple Point Tech. Inc.*, Case No. CV 17-6564 PSG (JCx), 2018 WL 6258894, at *4 (C.D. Cal. Aug. 16, 2018) (assertions that a "stay will simplify issues" do not establish a "clear case of hardship or inequity"). But those efficiency claims are debatable at best. The four cases will not "turn *solely*" on a single, purely legal issue that "cut[s] across all four cases." ECF 43-1 at 7 (emphasis added). Rather, Defendants argue that exemptions are categorically unreviewable, but the argument resorts in part to fact allegations; it is *not* purely legal. *Infra* at 10 and n.5. Thus, different fact allegations in the other three cases may prove significant to disputes over those exemptions' reviewability. And if Defendants are wrong about reviewability, then any *other* dispositive issue will require consideration of case-specific facts. *Infra* at 10-11. Defendants concede that "the specific Presidential Proclamation at issue and the details of the industry for which the President issued an exemption" are different in every case. ECF 43-1 at 6. Those are not trivial details.

      Defendants likewise fail to show that any efficiency outweighs the risk of confusion and prejudice from consolidating cases challenging four separate Presidential actions applying to distinct industries and air pollutant emissions, with standing based on different injured individuals in each case. *See Am. Civil Liberties Union Found. ("ACLU") v. Washington Metropolitan Area Transit Auth.*, No. 17-cv-1598 (TSC), 2024 WL 4285894, at *2 (D.D.C. Sept. 25, 2024) (movant has the burden). Defendants seek to stay all cases other than *t.e.j.a.s.* "even if the Court declines to consolidate," ECF 43-1 at 8, which shows that consolidation is a secondary consideration to abeyance. They otherwise suggest nothing about how to manage the consolidated cases. The happenstance that *t.e.j.a.s.* was first-filed is no basis to treat it as not just the "lead" but the *exclusive* case, as that prevents the Coke Ovens Plaintiffs from seeking relief.

## BACKGROUND

EPA promulgated the coke ovens toxic air pollutant standards at issue here on July 5, 2024, after many years of unlawful delay and finally a court injunction. 89 Fed. Reg. 55684 ("Coke Ovens Rule"); *see Citizens for Pa.'s Future v. Wheeler*, 469 F. Supp. 3d 920, 924–25 (N.D. Cal. 2020) (summarizing EPA's history of inaction and ordering the agency to conduct rulemaking). Many of the Coke Ovens Rule's pollution reduction standards required compliance by July 7, 2025, and compliance with the remainder was due January 5, 2026. ECF 14 ¶ 47.

This complaint is one of four filed in this Court since October 2025 that seek judicial review of "proclamations" purporting to exercise the President's limited authority under Clean Air Act Section 112(i)(4), 42 U.S.C. § 7412(i)(4). ECF 43-1 at 2 (listing cases). Section 7412(i)(4) authorizes the President to "exempt any stationary source from compliance" with hazardous air pollutant standards promulgated under Section 7412, "for a period of not more than 2 years if the President determines [1] that the technology to implement such standard is not available and [2] that it is in the national security interests of the United States to do so." 42 U.S.C. § 7412(i)(4).

The President issued a series of proclamations in 2025 invoking this authority to exempt about 180 sources across numerous industries, following EPA's public invitation to "the regulated community to request a Presidential Exemption under section 112(i)(4)" by sending EPA an email. ECF 14 ¶ 50; *see also id.* ¶¶ 7, 48-51. Among these was a proclamation dated November 21, 2025, exempting the entire coke oven industry (eleven facilities in all) from "all compliance deadlines established under the Coke Ovens Rule," "with each such deadline extended by 2 years from the date originally required for such deadline." *Id.* ¶ 56. Plaintiffs seek

a declaration that this proclamation is unlawful and invalid and that the compliance deadlines remain as EPA promulgated them, as well as injunctive relief. *Id.* at 31-32.

Each of the four complaints seeks review of a different proclamation. A total of twenty-one plaintiffs are named in the complaints, and they have different counsel representation.[2] Only two of those plaintiffs are named in more than one case.[3]

Defendants first contacted counsel to propose abeyance of the Coke Ovens case on February 2, 2026. Plaintiffs responded on February 6 that they opposed abeyance, intended to move for summary judgment by February 27, and suggested that parties confer about a potential schedule. Defendants did not respond to the request to confer. A few days before the noticed filing date for Plaintiffs' summary judgment motion, Defendants sought Plaintiffs' position on the relief specified by this motion, which Plaintiffs oppose for the reasons stated in this brief.

## STANDARD OF REVIEW

Courts have discretion to stay a case after weighing the benefits and hardships of a stay to each party and considering if it will promote efficient use of the court's and litigants' resources. *See Landis*, 299 U.S. at 254-55, 259. But if there is even "a fair possibility" that a stay "will work damage to some one else," the movant must "make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255-56 (explaining that "the burden of making out the

---

[2] For example, NRDC-employed counsel only represent three of the twenty-one plaintiffs: NRDC (in its capacity as a plaintiff); Environmental Justice Health Alliance; and Minnesota Center for Environmental Advocacy. Environmental Law & Policy Center (ELPC)-employed counsel have only noticed an appearance in the Coke Ovens case, and represent only ELPC. ELPC likewise appears as a named party only in this case, with its standing based on the impacts of coke ovens' emissions on its members.

[3] The only exceptions are NRDC—a large, nationwide membership organization with members affected by all four unlawful proclamations—and the Sierra Club, another large, nationwide membership organization that sued in two cases.

justice and wisdom" of a stay "lay heavily" on the movant). The inconvenience of defending multiple related cases does not, by itself, establish a "hardship or inequity" that could meet *Landis*'s test and overcome a stay's potential harm to nonmovants. *Lockyer*, 398 F.3d at 1112. "This is 'particularly true of counsel for the United States[.]'" *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21, *quoting Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (other citations omitted).

Consolidation is one option for managing "actions [that] involve a common question of law or fact." Fed. R. Civ. P. 42(a). The Court may: "(1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost of delay." *Id.* Courts weigh any potential "convenience and economy" from consolidation against the risk of "confusion and prejudice." *Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003). Courts "are not required" to consolidate related cases, and the movant "bears the burden of showing that the balance [favors] consolidation." *ACLU*, 2024 WL 4285894, at *2 (internal quotation omitted); *Singh v. Carter*, 185 F. Supp. 3d 11, 25 (D.D.C. 2016) (declining to consolidate cases that were "certainly similar").

## ARGUMENT

### I. DEFENDANTS FAIL TO SHOW THAT THE BALANCE OF HARMS AND THEIR PREDICTIONS OF JUDICIAL ECONOMY SUPPORT ABEYANCE.

#### A. A Stay Would Harm Plaintiffs and Deny Them a Chance for Meaningful Relief.

Staying this case—including the summary judgment motion that Coke Ovens Plaintiffs sought to file on February 27—would only exacerbate the injury that led to this Complaint's filing. The Coke Ovens proclamation allows the entire industry to forego compliance with toxic air pollutant standards that were largely due to be implemented eight months ago. That delay, in turn, follows many years of unlawful delay in promulgating the Coke Ovens Rule itself, which

only ended when a court ordered EPA to act. *Supra* at 4. The Coke Oven Plaintiffs moved for summary judgment as soon as reasonably possible (and without discovery) in hopes of reaching the merits promptly and remedying this harm. And, appropriately, they offered to confer with Defendants about scheduling before filing. Sidelining this Complaint while another is litigated will allow coke ovens' non-compliance with those already-past deadlines to continue day by day for an indeterminate period, compounding the air pollution impacts on Plaintiffs' members.

And those pollution impacts are significant. Coke ovens emit over 2,000 tons of hazardous air pollutants annually.[4] Their emissions are "among the most toxic of all air pollutants" according to EPA, *supra* at 1, and are associated with a large number of debilitating health impacts. *Supra* n.3. The Coke Ovens Rule improved public health protection from these emissions by establishing new limits on previously unregulated hazardous air pollutants; reducing leak limits and establishing additional monitoring requirements for components of coke oven batteries; and establishing a fenceline monitoring requirement that would require coke oven operators to conduct a root cause analysis and remedy exceedances with corrective action if concentrations of benzene (a carcinogen) exceed a specified "action level" after collecting data for a year. 89 Fed. Reg. at 55686. All sources were due to comply with most of the Coke Ovens Rule's requirements by July 7, 2025, but for the unlawful exemption proclamation. *Id.* at 55690. Every day that judicial review of the proclamation is postponed is another day that Plaintiffs' members are denied the protections of the Coke Ovens Rule.

---

[4] EPA, Residual Risk Assessment for the Coke Ovens: Pushing, Quenching, and Battery Stacks Source Category in Support of the 2023 Risk and Technology Review Proposed Rule app. 1, at 9 (2023), https://www.regulations.gov/document/EPA-HQ-OAR-2002-0085-0814 ("2023 Risk Assessment") (describing the coke production process); 69 Fed. Reg. 48338, 48341 (Aug. 9, 2004).

Plaintiffs' members have already suffered adverse health effects from their exposure to coke ovens' emissions. Compl. ¶¶ 106, 107. Their members would have benefitted from the Coke Ovens Rule in various ways, including being able to access data from fenceline monitoring that would be published online. *Id.* ¶¶ 108, 110-13, 115-16. Their members are further concerned that the Coke Ovens exemption proclamation may result in higher levels of toxic pollution and thus exacerbate their health impacts from the pollution. *Id.* ¶ 109. Thus, staying this complaint, and compelling the Coke Oven Plaintiffs to "stand aside" and wait until "another [case] settles the rule of law that will define the rights of both," would cause these plaintiffs immediate, significant, and ongoing harm. *Landis*, 299 U.S. at 255; *Belize*, 668 F.3d at 187.

Moreover, the exemption runs until July 2027 for many of the standards. Imposing indeterminate months of delay to wait for resolution of *t.e.j.a.s.* before allowing this case to proceed could mean that the entire two years of the unlawful exemption will run before the Coke Oven Plaintiffs can fully litigate their claims. Thus, granting Defendants' stay request not only is sure to *delay* the Coke Ovens Plaintiffs from seeking judicial relief from their injury; it may effectively deny them that chance *entirely*.

### B. Defendants Identify No Clear Hardship or Inequity in Moving Forward.

With Plaintiffs having shown *certain* harm from a stay, and at the very least the "fair possibility" of harm that *Landis* specifies, Defendants carry the "heavy" burden of demonstrating that allowing Plaintiffs to re-file their summary judgment motion and requiring Defendants to oppose it would result in clear hardship or inequity for the Defendants. *Landis*, 299 U.S. at 255. But Defendants fall far short of this demonstration. They identify their desire not to "file additional motions to dismiss in the remaining three cases, negotiate individual briefing schedules in all three cases, and, if plaintiffs are successful, litigate four attorney's fees

requests." ECF 43-1. In other words, they wish to avoid defending more than one case. But the caselaw is clear: having to defend multiple related cases is *not* a "hardship or inequity" and is not a proper basis to enter a stay that may harm non-movants. *Lockyer*, 398 F.3d at 1112; *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21; *see also Belize*, 668 F.3d at 731-33.

Moreover, Defendants' specific concerns are greatly overstated. If the threshold reviewability issue briefed in their *t.e.j.a.s* motion to dismiss is truly identical in its application across the cases and as unbound by facts as Defendants claim, then surely it will not be that difficult to file the same substantive motion in other cases. Negotiating briefing schedules in a cooperative manner is an everyday obligation of practitioners before this Court, and counsel for Plaintiffs already offered to do so. And if attorney's fees are determined appropriate under 42 U.S.C. § 7607(f), there is nothing unusual, let alone a "clear hardship," in addressing multiple fee requests. *See, e.g., Michigan v. EPA*, 254 F.3d 1087, 1091 (D.C. Cir. 2001).

Numerous courts have denied a stay—regardless of claims that it would promote efficiency—when it risked ongoing harm to the non-movant during the stay, including public health-related harm from pollution as in this case. *See Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*, 141 F. Supp. 3d 428, 452 (M.D.N.C. 2015) (denying a stay that "would allow Duke Energy's alleged violations to persist, resulting in the further alleged discharge of pollutants into the Yadkin River, High Rock Lake, and their tributaries" during the stay); *Ctr. for Biological Diversity*, 419 F.3d at 21 (declining to grant a stay pending a collateral administrative process, as it "[wa]s not clear" how administrative relief "at least nine months from now will alleviate the interim [environmental] harm" that could occur during the stay); *Gibbs v. Plain Green, LLC,* 331 F. Supp. 3d 518, 528 (E.D. Va 2018) (denying stay due to risk of continuing financial harm to nonmovant during the stay). Indeed, courts have declined to impose a stay due

to potential harm to nonmovants even where the United States made a colorable showing of hardship if the case was required to move forward. *See Ctr. for Biological Diversity*, 419 F.3d at 21 (government's argument that a collateral administrative process would be more beneficial to all parties than litigation, but would be thwarted unless the court entered a stay, was "superficially appealing" but "ultimately unavailing"). Here, in contrast, Defendants' showing is not even colorable. Thus, they cannot carry their burden under *Landis*.

### C. If The Court Considers Judicial Economy, That Also Weighs Against Abeyance.

Having failed to show a clear hardship or inequity, Defendants' belief that a stay would "simplify issues [or] questions of law" is not a proper basis to grant a stay that may harm the nonmovants. *Mieco*, 2018 WL 6258894, at *4. In addition, that belief may be wrong. It is premised on debatable assumptions: first, that Defendants will prevail on the argument in their motion to dismiss *t.e.j.a.s.* that no proclamation under section 7412(i)(4) can *ever* be reviewed; and second, that no resort to facts would be necessary to decide this argument in any of the four cases. *Compare* ECF 43-1 at 4-5, ¶4, *with* 1:25-cv-04469-CRC, Dkt. No. 34 at 6-13.

Defendants' motion to dismiss in *t.e.j.a.s.* already belies the second assumption, as their reviewability argument cites allegations from five paragraphs of the complaint. 1:25-cv-04469-CRC, Dkt. No. 34 at 12 (citing ¶¶ 154, 156, 160, 162 & 165).[5] And, if the first assumption also fails to hold—that is, if Defendants do *not* prevail on reviewability—then any other ground for dismissal of any of the four cases will vary depending on the interests of the specific plaintiffs involved (to the extent Defendants challenge standing), the text and surrounding circumstances

---

[5] While their argument leads with an assertion that the Clean Air Act's judicial review scheme bars review—which does not appear to rely on facts—the Coke Oven Plaintiffs disagree and are prepared, if permitted, to resubmit their summary judgment motion explaining why.

of each proclamation's issuance, and possibly other facts. *See, e.g.*, Dkt. No. 34 at 17-18 (citing 14 paragraphs of the *t.e.j.a.s.* complaint to argue that those plaintiffs lack standing). Equally, the plaintiffs' arguments in *support* of standing in each case will rely on declarations from a unique set of individuals affected by a specific industry's non-compliance with specific standards, and their merits arguments likewise will rely on facts that vary with respect to each proclamation.

Thus, there is a significant likelihood that staying the three cases will just *delay*, not resolve them, and will not achieve any efficiencies given the need to consider distinct facts in each case. This would *lengthen* the overall period of litigation; require the same if not greater resources; and substantially delay justice in the event the Coke Ovens Plaintiffs are found meritorious. And as shown above, the stay could effectively *deny* the Coke Ovens Plaintiffs any meaningful relief from the unlawful proclamation altogether *even if* they are ultimately correct on all disputed issues. In short, none of Defendants' "efficiency" claims can legitimize a stay that would be so manifestly unjust to the Coke Ovens Plaintiffs. The Court should deny it.[6]

## II. DEFENDANTS FAIL TO SHOW THAT CONSOLIDATION IS APPROPRIATE.

Courts have numerous means of managing related cases. Of these options, Defendants only speak to consolidation, but their sole focus is to stay all other cases besides *t.e.j.a.s.* "even if the Court declines to consolidate these matters." ECF 43-1 at 8. Defendants fail to explain any

---

[6] None of Defendants' cases support their stay request. In *Hulley*, the court stayed proceedings to await the outcome of an appeal in a foreign court, where both court actions involved *completely identical* parties and sought to address the validity of the *same* arbitration awards, not distinct exemption proclamations invoking the same statutory authority. *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 272 (D.D.C. 20216). *National Hydropower* involved abeyance of litigation to await completion of a reconsideration rulemaking; Defendants' motion does not seek a stay on that basis. *See National Hydropower Ass'n v. U.S. Fish & Wildlife Serv.*, No. 24-2285 (SLS), 2025 WL 1555156, at *1 (D.D.C. June 2, 2025). And *Clinton v. Jones* held that a stay of trial abused the district court's discretion. 520 U.S. 681, 707 (1997).

purpose of consolidation *other* than staying those cases. Nor do they cite precedent for abating some, but not all, of a consolidated action.[7] Because consolidation is thus little more than an adjunct to their abeyance motion, their failure to satisfy *Landis* should be grounds to deny it.

Even on its own merit, the consolidation request should be denied because Defendants have not met their burden to show that the purported efficiency of consolidation outweighs the risk of confusion and prejudicial delay. *See ACLU*, 2024 WL 425894, at *2. As shown above, Defendants' motion rests on the theory that Section 7412(i)(4) proclamations are universally and categorically unreviewable—i.e., that no proclamation purporting to exercise this statutory authority can ever be judicially reviewed. *Supra* at 9-10. Defendants offer no other basis to assume efficiencies will flow from consolidation.[8] But, if Defendants' legal theory is incorrect, then the Court will have to review and decide each case individually. And, in that event, there will be *no* efficiency whatsoever from granting Defendants' procedural motion, just months of delay in every case other than *t.e.j.a.s.*, a compounding of the eight-months-and-counting delay of compliance with the Coke Ovens Rule, and severe prejudice to the Coke Ovens Plaintiffs. *See Singh v. Carter*, 185 F. Supp. 3d at 18 (denying consolidation that was likely to delay final case resolution). Thus, rather than provisionally crediting Defendants' non-reviewability assumptions, the Court should deny consolidation.

---

[7] The D.C. Circuit often consolidates multiple petitions for review. Its typical practice is to sever from such consolidated actions a petition to be stayed while others are litigated—the opposite of what Defendants propose. *See, e.g.*, *Sierra Club v. EPA*, 895 F.3d 1, 6 (D.C. Cir. 2018).

[8] Defendants' observation that the four cases were designated as "related" for purposes of Local Rule 40 adds nothing, because "a related-case inquiry is separate and distinct from an inquiry regarding case consolidation." *Singh v. McConville*, 187 F. Supp. 3d 152, 155–56 (D.D.C. 2016) (granting related-case status but denying consolidation).

## III. CONCLUSION

The Court should deny Defendants' motion, at which point the Coke Ovens Plaintiffs are prepared to immediately refile their motion for summary judgment in substantially identical form. Therefore, to avoid any further delay, the Court should also enter a briefing schedule with the following intervals.

| **Filing** | **Deadline** |
|---|---|
| Plaintiffs Motion for Summary Judgment | Within 3 days of an order denying Defendants' Abeyance Motion |
| Defendants Opposition (and any Cross Motion) | 30 days thereafter |
| Intervenor Brief in Support[9] | 3 days thereafter |
| Plaintiffs Reply (and any Opposition to the Defendants' Cross Motion) | 14 days thereafter |
| Defendants' Reply ISO the Cross-Motion | 10 days thereafter |
| Intervenor Reply Brief | 3 days thereafter |

---

[9] If intervention is granted.

DATED: March 6, 2026

/s/ Tosh Sagar
Tosh Sagar (D.C. Bar No. 1562693)
Sage Lincoln (Pro Hac Vice, D.C. Bar No. 90042038)
Earthjustice
1250 I Street NW, 4th Floor
Washington, DC 20005
Tel: (202) 793-2075
tsagar@earthjustice.org
slincoln@earthjustice.org

*Counsel for Citizens for Pennsylvania's Future, Hoosier Environmental Council, Just Transition Northwest Indiana, and Sierra Club*

/s/ Sarah A. Buckley
Shampa Panda (D.C. Bar No. 90030605)
Sarah A. Buckley (D.C. Bar No. 90035401)
Natural Resources Defense Council, Inc.
1152 15th St. NW, Suite 300
Washington, D.C. 20005
Tel: (202) 836-9333
Tel: (202) 836-9555
spanda-bryant@nrdc.org
sbuckley@nrdc.org

*Counsel for Natural Resources Defense Council*

/s/ Brian H. Lynk
Brian H. Lynk (D.C. Bar No. 459525)
Environmental Law & Policy Center
740 15th St. NW, Suite 700
Washington, D.C. 20005
Tel: 240-461-4241
blynk@elpc.org

*Counsel for Environmental Law & Policy Center*

Respectfully submitted,

*/s/* Jaclyn Brass (Pro Hac Vice)
Jaclyn Brass (Ala. Bar No. ASB-5340-B19L)
Christina Tidwell (Ala. Bar No ASB-9696-D10R)
Southern Environmental Law Center
2829 2nd Avenue S, Suite 282
Birmingham, AL 35233
Tel: 205-745-3060
Jbrass@selc.org
Ctidwell@selcal.org

Keri N. Powell (D.C. Bar No. 477045)
Southern Environmental Law Center
Ten 10th Street NW, Suite 1050
Atlanta, GA 30309
Tel: 678-433-6851
Kpowell@selc.org

*Counsel for Greater-Birmingham Alliance to Stop Pollution*

/s/ Haley Lewis (Pro Hac Vice)
Haley Lewis (AL Bar No. ASB-1008-R66I)
888 17th Street, NW, Suite 810
Washington, DC 20006
Tel: (202) 263-4449
hlewis@environmentalintegrity.org

Abel Russ (D.C. Bar No. 1007020)
888 17th Street, NW, Suite 810
Washington, DC 20006
Tel: (802) 482-5379
aruss@environmentalintegrity.org
*Counsel for Greater-Birmingham Alliance to Stop Pollution and Clean Air Council*